LINDA MAY BLANCHARD, ON BEHALF OF CHE WARREN BLANCHARD, A MINOR CHILD, APPELLANT, v. NEVADA STATE WELFARE DEPARTMENT, RESPONDENT.

No. 7856

NEVADA STATE WELFARE DEPARTMENT, APPELLANT, v. LINDA MAY BLANCHARD, ON BEHALF OF CHE WARREN BLANCHARD, A MINOR CHILD, RESPONDENT.

No. 8024

November 21, 1975                    542 P.2d 737

*Johns & Johns,* of Las Vegas, for Linda May Blanchard.

*Robert List,* Attorney General, and *Walter V. Norwood,* Deputy Attorney General, for Nevada State Welfare Department.

## OPINION

By the Court, ZENOFF, J.:

On June 7, 1973, Linda May Blanchard executed a form prepared by the Nevada State Welfare Department designated "Relinquishment of Child for Adoption." The child, born on October 1, 1972, was placed in the custody of the welfare authorities and remains in their custody.

Approximately one year after she executed the relinquishment, the mother changed her mind and petitioned for a writ of habeas corpus seeking the return of her child. She alleged that at the time she executed the relinquishment she was under severe mental, physical and emotional distress and under the influence of certain drugs. She contends that because of her

condition the relinquishment was not knowingly, willfully and voluntarily made and was therefore invalid.

Linda and her husband, the baby's father, were both addicted to narcotics. As a result of mutual drug addiction and pronounced instability of the husband, the marital relationship, such as it was, was stormy and the parties eventually divorced.

1. On June 7, 1973, when Linda executed the relinquishment, she was receiving daily methadone treatments. On that date, prior to signing the relinquishment, she received an 80 milligram dose of methadone and allegedly had taken 100 milligrams of valium. Two witnesses who at the time worked for the welfare department testified that she appeared lucid and did not appear to be under the influence of any drugs.[1] Dr. S. E. LoBello, from the Methadone Clinic, stated that the methadone dosage taken by Linda should have had little effect on her ability to make a knowing voluntary decision. Other witnesses testified that she appeared rational, calm and in control of herself.

Although the nature of her condition was not completely undisputed, the rule in the face of conflicting evidence remains, nevertheless, that where there is substantial evidence to support the ruling of the trial court, such a ruling will not be disturbed on appeal. Bangston v. Brown, 86 Nev. 653, 473 P.2d 829 (1970); Brandon v. Travitsky, 86 Nev. 613, 472 P.2d 353 (1970). We therefore decline to overturn the lower court's determination on this issue.

2. Linda also questions the legal validity of the relinquishment in terms of strict compliance with NRS 127.040. The statute provides that a valid relinquishment may be effectuated only when signed by both parents unless one parent is dead, the child was born out of wedlock, a guardian has been judicially appointed or one parent had been adjudged insane for a period of at least two years. She argues that the statute must be construed to require that both parents execute the relinquishment before it becomes effective as to either and that both parents execute the document at the same time.

These requirements, of course, do not appear in the statute

---

[1]This evidence conflicts with Linda's testimony that she, prior to arriving at the welfare department, had taken 100 milligrams of valium.

and we do not agree with that construction. Furthermore, while it is true both parents must execute a relinquishment, that her husband did not does not in itself invalidate Linda's signature. Before the child can be placed for adoption either he must voluntarily relinquish his parental rights in the same manner as Linda or his rights must be terminated in some other fashion consistent with statutory directives.

From the standpoint of Linda's parental rights, this court has previously ruled in Ex Parte Schultz, 64 Nev. 264, 181 P.2d 585 (1947), and Welfare Division v. Maynard, 84 Nev. 525, 445 P.2d 153 (1968), that a relinquishment once validly executed cannot be withdrawn. Linda was 27 years old at the time these proceedings were commenced, had six years previously relinquished one of her children for adoption, knew the consequences thereof and now must suffer the consequences of her deliberate act.

The trial court found, and we support its conclusion, that Linda was in sufficient possession of her faculties when she executed the relinquishment to do so knowingly and voluntarily. Once a relinquishment is knowingly and voluntarily executed it becomes irrevocable. NRS 127.080; Welfare Division v. Maynard, supra.

3. The second case consolidated in this appeal concerns the lower court ruling compelling the state to pay for the preparation of a transcript for Linda's use in her appeal from the adverse ruling in the habeas corpus proceeding. This is a civil action in which the state stands as any other individual and because it was the prevailing party below, it cannot be compelled to bear appellant's costs on appeal. NRS 18.040.

We affirm the trial court in the habeas corpus proceeding, Case No. 7856, but reverse No. 8024.

GUNDERSON, C. J., and MOWBRAY, BATJER, and THOMPSON, JJ., concur.