NATHAN S. JACOBSON, Appellant and Cross-Respond-
ent, v. BEST BRANDS, INC., a Nevada Corporation,
Respondent and Cross-Appellant.

No. 11028

August 31, 1981

632 P.2d 1150

*Morse-Foley,* Las Vegas, and *Simon & Sheridan,* Los
Angeles, for Appellant and Cross-Respondent.

*Dickerson, Miles & Pico,* Las Vegas, and *Saphier, Rein &
Burris,* Los Angeles, for Respondent and Cross-Appellant.

## OPINION

By the Court, BATJER, J.:

Appellant Nathan S. Jacobson appeals from a judgment entered against him in the amount of $72,627.21, together with attorney's fees and costs. Respondent Best Brands, Inc., cross-appeals from the judgment, claiming interest on the principal sum of the judgment and an attorney's fee in excess of the $1,000 awarded by the district court.

Best Brands brought this action against Jacobson to recover sums covered by a written guaranty executed by Jacobson when he was the president of A.L.W., Inc., doing business as Kings Castle Hotel & Casino at Incline Village, Nevada (Kings Castle).

Best Brands supplied liquor products to Kings Castle on credit. On August 13, 1971, at the request of Best Brands' president, Steven Wynn, Jacobson executed a written guaranty agreement. The guaranty provided that Jacobson would personally guarantee payment of any amounts due and owing from Kings Castle in an amount not to exceed $100,000. At the time the guaranty was executed, Kings Castle owed Best Brands about $65,000.

By early 1972, Kings Castle was experiencing financial difficulties and on January 31, 1972, filed a Chapter 11 bankruptcy proceeding. Best Brands filed a claim for $86,581.08 in the bankruptcy proceeding and received $13,653.87 as their pro rata share of the Kings Castle arrangement account.

In May, 1974, Kings Castle was sold to Jenny, Inc., with the approval of the bankruptcy court. As part of the sale, Jenny, Inc., agreed to indemnify Jacobson against liability incurred by virtue of the written guaranty given to Best Brands in the approximate amount of $86,000. Jenny, Inc., reopened Kings Castle and operated it for a short time before experiencing financial difficulties. Best Brands was again the liquor purveyor to Kings Castle under Jenny, Inc.'s, ownership. When Jenny, Inc. reopened the resort, there was a quantity of wine which had spoiled during the closure and Best Brands gave Jenny, Inc., a credit for the amount of the spoilage.

Jacobson contended at trial and on appeal that: (1) He signed the guaranty only as a personal accommodation to Wynn and there was no "meeting of the minds" to constitute a binding contract, and (2) The obligation to Best Brands was extinguished by Jenny, Inc.'s, agreement to assume Jacobson's obligation to Best Brands.

The district court found that appellant had failed to make a sufficient showing to overcome the legal effect to be given an instrument voluntarily executed. Further, that court found that Jacobson had failed to present any evidence other than his own testimony to support his "personal accommodation" contention.

Parol evidence may be offered to defeat the object and effect of a written instrument, but that evidence must be clear, strong, convincing and attended with no uncertainty. Davidson v. Streeter, 68 Nev. 427, 439, 234 P.2d 793, 799 (1951).

Here, Wynn testified that he told Jacobson that he had three options: (1) pay a substantial part of the $65,000 bill, (2) sign the guaranty, or (3) not receive any more shipments of liquor. The thrust of Jacobson's testimony was recounting his close personal and social relationship with Wynn, that he had signed the guaranty at Wynn's request as a personal accommodation, and that there was no "meeting of the minds" with Wynn as to the document's enforceability against him. He also testified that a meeting had taken place where a representative of Jenny, Inc., the manager of Best Brands for the Reno, Nevada, area, and Jacobson himself orally agreed that Jenny, Inc., would assume the Kings Castle debt to Best Brands.

Best Brands' manager of the Reno, Nevada, area, C. O. Watson, testified that he never attended such a meeting, nor did he discuss the assumption of the Kings Castle debt with anyone from Jenny, Inc., and that Jenny, Inc.'s, account was kept separate from the "old Kings Castle" account.

Jacobson also places great reliance on the fact that Best Brands credited Jenny, Inc.'s, account for the wine spoilage, even though the purchase of these wines was on the "old Kings Castle" account.

The district court found that Best Brands did not agree to discharge Jacobson's debt, nor did Best Brands agree, either orally or in writing, to discharge Jacobson in exchange for receiving an account with Jenny, Inc.

It is the prerogative of the trier of facts to evaluate the credibility of witnesses and determine the weight of their testimony. Douglas Spencer v. Las Vegas Sun, 84 Nev. 279, 439 P.2d 473 (1968).

Where there is substantial evidence to support the findings of

the trial court, this court will affirm the judgment even though the evidence is conflicting. Clark Co. Sports v. City of Las Vegas, 96 Nev. 167, 606 P.2d 171 (1980). Blanchard v. Nevada State Welfare Dep't, 91 Nev. 749, 542 P.2d 737 (1975); Lyon v. Walker Boudwin Constr. Co., 88 Nev. 646, 503 P.2d 1219 (1972). Here, the finding of the district court is supported by substantial evidence.

In light of the district court's finding that Best Brands did not agree, either orally or in writing, to discharge appellant in exchange for receiving an account with Jenny, Inc., appellant's contention that his obligation to Best Brands was extinguished by Jenny, Inc.'s, agreement to assume appellant's obligation to Best Brands becomes specious.

## CROSS-APPEAL

As previously noted, respondent filed a cross-appeal from that portion of the judgment which disallowed interest[1] on the principal sum of the judgment and for an attorney's fee in excess of the $1,000 awarded by the district court.[2]

The district court properly found that the parties had waived interest on the sums covered by the guaranty because of the express terms of the guaranty.[3]

When the parties specifically deleted the reference to interest in the guaranty instrument it became obvious that they

---

[1]Appellant did not respond to the respondent's answering brief raising the issue of interest on the judgment. We could have considered this to be a confession of error. See NRAP 32(c); Summa Corp. v. Brooks Rent-A-Car, 95 Nev. 779, 602 P.2d 192 (1979); Kitchen Factors, Inc. v. Brown, 91 Nev. 308, 535 P.2d 677 (1975). We prefer to decide the issue on the merits.

[2]We will not entertain the question of the adequacy of the attorney's fee because respondent has not briefed that issue on appeal. See Summa Corp. v. Brooks Rent-A-Car, supra.

[3]The pertinent portion of the guaranty relating to interest provides:
The liabilities of the guarantors shall remain at all times undiminished, unreleased, and undischarged to any extent whatever by any action done pursuant to, or under, this agreement, or left undone by the supplier until the payment in full of all the indebtedness hereby guaranteed, including interest and expenses in connection therewith, provided that the liability of the undersigned by reason of this guaranty shall not exceed one hundred thousand and 00/xx dollars. (The lined-through portion was initialed by both parties.)

intended no interest be charged on the amount owed. Accordingly, the provisions of NRS 17.130(2)[4] and NRS 99.040[5] do not apply. Since the parties agreed that no interest be charged under the guaranty instrument, a judgment rendered on such contract must conform thereto. Leprechaun Mining & Chemical, Inc. v. Grigor, 91 Nev. 148, 532 P.2d 602 (1975); Jones v. Edwards, 49 Nev. 299, 245 P. 292 (1926).

For the reasons expressed above, the judgment of the district court is affirmed in its entirety.

GUNDERSON, C. J., and MANOUKIAN and SPRINGER, JJ., and ZENOFF, SR. J.,[6] concur.

[4]NRS 17.130(2) provides, in pertinent part:

When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest at the rate of seven percent per annum from the time of service of the summons and complaint until satisfied, except for any amount representing future damages, which draws interest at that rate only from the time of the entry of the judgment until satisfied.

[5]NRS 99.040 provides:

When there is no express contract in writing fixing a different rate of interest, interest shall be allowed at the rate of 8 percent per annum upon all money from the time it becomes due, in the following cases:

1. Upon contracts, express or implied, other than book accounts.

2. Upon the settlement of book or store accounts from the day on which the balance is ascertained.

3. Upon money received to the use and benefit of another and detained without his consent.

4. Upon wages or salary, if it is unpaid when due, after demand therefor has been made.

[6]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE JOHN MOWBRAY, who voluntarily disqualified himself in this case. Nev. Const. art. 6, § 19; SCR 10.