MILL-SPEX, INC., A Nevada Corporation, Appellant, *v.* PYRAMID PRECAST CORPORATION, a California Corporation, Respondent.

No. 15350

December 31, 1985                    710 P.2d 1387

*Carl F. Martillaro,* Carson City, for Appellant.

*Shaw, Heaton, Doescher & Owen,* Carson City, for Respondent.

## OPINION

*Per Curiam:*

Respondent-lessor filed this action to recover rental payments owed by appellant-lessee pursuant to the terms of their lease. The lessee admitted its failure to make rental payments, but counterclaimed for damages resulting from the lessor's alleged breach of the lease agreement. The district court entered judgment in favor of the lessor for the amount of the unpaid rent, and against the lessee as to its counterclaim. The lessee appeals from the district court's ruling on the counterclaim.

The lease agreement provided for a one-year term, with an option to renew for an additional year. The lease further provided that the lessor would make certain repairs on the premises, including repairs to the heating system, lighting, walls of the building, and the surrounding property. The testimony at trial indicates that some of these repairs were never completed. Nevertheless, the lessee opted to renew the lease at the end of the first year. The district court, in its written findings of fact and conclusions of law, concluded the following:

■ That the exercise by [the lessee] of its option to extend the initial one year lease period for an additional year, constituted a waiver of any claim for damages which [the lessee] may otherwise have had. . . .

■ That [the lessee] extending the lease term for an additional one year period, continuing to remain on the premises for a period of 13 months thereafter and paying rent for nine months thereafter precluded any recovery by [the lessee] of any damages. . . .

The lessee contends that the act of renewing the lease does not, in itself, constitute a waiver of its right to seek damages. We agree, and therefore reverse.

A waiver is the intentional relinquishment of a known right. Reno Realty v. Hornstein, 72 Nev. 219, 301 P.2d 1051 (1956). A waiver may be implied from conduct which evidences an intention to waive a right, or by conduct which is inconsistent with any other intention than to waive the right. Mahban v. MGM Grand Hotels, Inc., 100 Nev. 593, 691 P.2d 421 (1984). Whether there has been a waiver is ordinarily a question for the trier of fact. *Id.* at 595, 691 P.2d at 424.

No authority has been cited by respondent, nor are we aware of any, which holds that a lessee's exercise of its right to renew a lease constitutes a waiver of its claims for damages resulting from the landlord's breach of his duty to repair. Even if we construe the district court's conclusion above as a factual finding, we discern no substantial evidence which would support such a finding. Undisputed testimony indicated that it would not have been feasible for the lessee, who utilized the demised premises for a manufacturing operation, to relocate. Furthermore, Jack Hardy, the sole officer, director and shareholder of the lessee-corporation, testified that at the time the lease was renewed, the lessor assured him it would undertake the necessary repairs. Because the foregoing considerations may have motivated the lessee to renew the lease despite the alleged breaches of the lessor, we conclude that the lessee's conduct in renewing the lease does not in itself constitute evidence of intent sufficient to imply a waiver. *See* Reno Realty v. Hornstein, 72 Nev. at 225 (if an intention to waive a right is to be implied from conduct, the conduct should clearly reflect that intention).

The lessor contends that even if appellant did not waive its right to such damages, we should affirm the judgment because the district court found that the lessee failed in its burden to prove

damages. We disagree. The district court entered no written findings of fact or conclusions of law concerning the lessee's damages. The only reference which the district court made to such damages appears in its oral ruling from the bench.[1] The district court's statements relating to the damages sustained by the lessee appear to have been influenced by its determination that the lessee had waived its claim. Therefore, we consider the district court's statements to be inconclusive as to whether the lessee sufficiently proved damages.

Finally, the lessor contends that the record is devoid of any evidence establishing the amount of the lessee's damages with reasonable certainty, or establishing that the lessee's alleged loss was within the contemplation of the parties, at the time they made the contract, as a probable result of the lessor's breach. *See* Pappas v. Zerwoodis, 153 P.2d 170 (Wash. 1944). Our review of the record, however, reveals testimony from Jack Hardy and several of his employees concerning the nature of the alleged damages and the costs which were allegedly incurred as a result of those damages. In particular, the testimony indicates that the lessee's employees expended a sizeable number of man-hours in order to mitigate problems allegedly resulting from the lessor's breaches. Furthermore, it is at least arguable, under these circumstances, that some of the alleged loss was within the contemplation of the parties at the time they entered into the contract.

Nevertheless, it is within the province of the trier of fact to evaluate the credibility of witnesses and determine the weight of their testimony. Jacobson v. Best Brands, Inc., 97 Nev. 390, 632 P.2d 1150 (1981). The district court never entered any specific findings of fact or conclusions of law as to either the amount or foreseeability of damages. Therefore we reverse the judgment and remand this case to the district court with instructions that it reconsider appellant's counterclaim for damages in light of this opinion.

---

[1]The district court stated from the bench:

Now, I think that the condition of the building was obviously a problem for the defendant. The pictures show me, in any event, that it would be very difficult to operate in that building, but I didn't hear any evidence that is significantly convincing to me to show exactly what limits of damages those were, in light of the exercise of the option.